CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January 13, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **KEITH EDWARD MOSS,** ) | |
| Plaintiff, ) | Case No. 7:23-cv-00116 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **TIM TRENT,** et al., ) | Senior United States District Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

Keith Edward Moss, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C § 1983 against six current or former employees of the Blue Ridge Regional Jail Authority (BRRJA): Tim Trent, Joshua Salmon, Major Moore, Major Enochs, Captain Wray, and Captain Hodges. Moss claims that the defendants violated his rights under federal and state law. The case is presently before the court for review under 28 U.S.C. § 1915A(a). Having reviewed the original complaint, the court concludes that the federal claims must be dismissed for failure to state a claim upon which relief may be granted, and the court declines to exercise supplemental jurisdiction over any remaining claim under state law. Because Moss is entitled to amend his complaint once as a matter of course under Federal Rule of Civil Procedure 15(a), the court will grant his pending motion to amend and for an extension of time, ECF No. 22, and permit him to file an amended complaint within 30 days.*

---

\* Moss did not submit an amended complaint with his motion to amend. If Moss chooses to file an amended complaint against the defendants, the amended complaint will be subject to screening under § 1915A(b)(1). Because Moss has not yet stated a plausible claim for relief under federal law against any defendant, his pending motion for discovery, ECF No. 21, will be denied without prejudice.

## I.  Background

Moss is currently serving a state sentence in the custody of the Virginia Department of Corrections. Compl., ECF No. 1, at 1. The events giving rise to this action occurred while Moss was incarcerated at the Lynchburg Adult Detention Center (LADC), a facility operated by the BRRJA. The case is one of several suits that Moss filed against municipal and correctional officials related to his arrest and subsequent detention at the LADC. See, e.g., Moss v. Trent, No. 7:23-cv-00110 (W.D. Va.); Moss v. Booth, No. 7:23-cv-00112 (W.D. Va.); Moss v. Youngkin, No. 7:23-cv-00457 (W.D. Va.).

The claims in this case primarily stem from various deductions made to Moss's inmate trust account while he was housed at the LADC. He alleges that a $1.00 daily housing fee was erroneously deducted from funds in his account that should have remained available for him to use. Id. at 9. He also alleges that the "Jail Management System" automatically deducted a $5.00 fee for medical services from his account using funds that should have remained available for him to use. Id. at 19.

For approximately five months of his confinement at the LADC, Moss was denied access to a phone or tablet. Id. at 32. As a result, he was unable to "contact his friends or family to obtain funds or access the jail's commissary to order hygiene [products]." Id. Moss alleges that he waited several months to receive an extra pair of free underwear and that he received no additional underwear during his period of confinement. Id. at 33–34.

On June 22, 2022, Moss's significant other added $20.00 to his inmate trust account for him to use to order a new pair of underwear. Id. at 34. That same day, an $8.00 charge was deducted from Moss's account for 70 pages in copies even though the fee for copies was only

ten cents per page. Id. Following the deductions for copies, unpaid housing fees, and a payment for phone time, Moss was left with less than $4.00 in his inmate trust account, which was not enough to purchase another pair of underwear from the commissary. Id. at 36–39.

Around the same time, all of the facilities operated by the BRRJA "experienced a very intrusive breach of security which involved the computer, phone, tablet, and Jail Management System." Id. at 27. The breach prevented inmates from accessing their inmate trust accounts and receiving care packages from friends and family members. Id. Because of the potential for unauthorized parties to gain access to personal information, Moss and other inmates were instructed to change their inmate passcodes for security purposes. Id. at 27–28.

Based on the foregoing allegations, Moss asserts three claims against the defendants: (1) that the defendants acted with "deliberate indifference to the deprivation of [his] loss of dignity" in violation of his federal constitutional rights; (2) that the defendants violated his right to due process by failing to "reasonably respond to the improper deductions of funds" from his inmate trust account; and (3) that defendants Trent and Moore violated the Virginia Personal Information Breach Notifications Act, Va. Code § 18.2-186.6, by failing to provide adequate notice that his personal information had been compromised. Id. at 54.

## II. Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as

3

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A complaint filed by a pro se litigant must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still state a claim to relief that is plausible on its face." Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (internal quotation marks omitted).

### III. Discussion

#### A. Constitutional Claims under Section 1983

Moss commenced this action by filing a form complaint under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Additionally, because liability is "determined person by person," a plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) (internal quotation marks omitted).

### 1. Conditions of Confinement Claim

Moss first appears to assert that he was subjected to unconstitutional conditions of confinement as a result of not being able to purchase extra underwear or personal hygiene items. He alleges that the defendants' "deliberate indifference" to his "loss of dignity" constituted "cruel and unusual punishment under the Eighth Amendment to the United States Constitution." Compl. at 54.

The standard that applies to a claim challenging conditions of confinement depends on whether a plaintiff was a convicted inmate or a pretrial detainee at the time of the conditions at issue. The Eighth Amendment protects convicted inmates from cruel and unusual punishment and imposes an affirmative obligation on correctional officials to provide humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components." Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019) (internal quotation marks omitted). To satisfy the objective component, an inmate must "demonstrate that the deprivation alleged was objectively sufficiently serious." Id. (internal quotation marks and brackets omitted). "To be sufficiently serious, the deprivation must be extreme—meaning that it poses a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of harm resulting from . . . exposure to the challenged conditions." Id. (internal quotation marks omitted). And to satisfy the subjective component, a plaintiff must demonstrate that defendants acted with "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834. Specifically, the plaintiff must

5

show that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and actually drew that inference. Id. at 837.

A pretrial detainee's claim of deliberate indifference to unsafe or inhumane conditions of confinement is governed by the Due Process Clause of the Fourteenth Amendment. See Short v. Hartman, 87 F.4th 593, 603–05 (4th Cir. 2023) (addressing a pretrial detainee's claim of deliberate indifference to serious medical needs). To state such claim, a pretrial detainee must plead facts sufficient to establish that he was subjected to a condition of confinement that posed a substantial risk of serious harm, that "the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed," and that "the defendant knew or should have known . . . that the defendant's action or inaction posed an unjustifiably high risk of harm." Id. at 611; see also Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (adopting a similar test for conditions of confinement claims under the Due Process Clause of the Fourteenth Amendment); Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (same).

Moss's complaint fails to state a cognizable violation of the Eighth Amendment or the Fourteenth Amendment. While Moss may have preferred to have access to extra hygiene products and underwear, his complaint does not set forth any facts from which the court could reasonably infer that the conditions of confinement at issue posed a substantial risk of serious harm. Likewise, the allegations in the complaint do not provide a plausible basis to conclude that any of the named defendants "consciously disregarded the risk that their action or failure to act would result in harm" or "knew or should have known . . . that [their] action or inaction posed an unjustifiably high risk of harm." Short, 87 F.4th at 611. Consequently, the complaint

6

fails to state a claim for unconstitutional conditions of confinement against any of the named defendants.

### 2. Due Process Claim

Moss next asserts that he had a protected property interest in his inmate trust account and that he was deprived of funds in the account without due process. This claim appears to be based on the $1.00 daily housing fee, the $5.00 fee charged for medical services, and the $8.00 fee that was incorrectly assessed for 70 copies.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). Although Moss had a protected property interest in his trust account at the LADC, see Henderson v. Harmon, 102 F.4th 242, 247–48 (4th Cir. 2004), he does not plausibly allege that the defendants deprived him of that interest without due process.

"Due process is flexible and calls for such procedural protections as the particular situation demands." Gilbert v. Homar, 520 U.S. 924, 930 (1997). Although due process generally requires an opportunity to be heard prior to the deprivation of a property interest, it is well established that a pre-deprivation hearing is not required in all circumstances. See Zinermon v. Burch, 494 U.S. 113, 127–28 (1990) (collecting cases). One such circumstance exists when a jail charges a nominal fee for housing or medical services, as permitted under Virginia law. See Va. Code Ann. § 53.1-131.3 ("Any sheriff or jail superintendent may establish

7

a program to charge inmates a reasonable fee, not to exceed $3 per day, to defray the costs associated with the prisoners' keep."); Va. Code Ann. § 53.1-133.01 ("Any sheriff or superintendent may establish a medical treatment program for prisoners in which prisoners participate and pay towards a portion of the costs thereof."). As the United States Court of Appeals for the Fourth Circuit explained nearly 20 years ago in Slade v. Hampton Roads Regional Jail:

> The Jail . . . has a legitimate interest in attempting to defray the costs of a prisoner's keep and a legitimate interest in the collection of the fee. There is also little risk of erroneous deprivation that a pre-deprivation hearing would ameliorate. The daily deduction of the charge from the prisoner's account is a ministerial matter with no discretion and minimal risk of error. To require pre-deprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the Jail's costs of incarcerating prisoners. Accordingly, we do not believe that procedural due process requires a pre-deprivation hearing before the charge is deducted from a prisoner's account.

Slade, 407 F.3d 243, 252–53 (4th Cir. 2005); see also Poole v. Isaacs, 703 F.3d 1024, 1027 (7th Cir. 2012) (joining other courts in holding that "the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"); Bailey v. Carter, 15 F. App'x 245, 251 (6th Cir. 2001) (concluding that inmates had no viable due process claim stemming from the deduction of a medical copayment fee from their trust accounts); Reynolds v. Wagner, 128 F.3d 166, 180–81 (3d Cir. 1997) (holding that "charging inmates for medical fees is not unconstitutional per se" and that the district court did not err in rejecting inmates' procedural due process challenges).

Additionally, to the extent that Moss alleges that any of the fees were not authorized, such as the $8.00 fee for 70 copies, the unauthorized deprivation of an inmate's trust account funds or other property "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Here, Moss "has not alleged the absence of a post-deprivation remedy" for any unauthorized deductions from his inmate trust account. Slade, 407 F.3d at 253 n.9. He acknowledges that he "used the grievance procedure available at the Lynchburg Adult Detention Center to try and solve the problem" related to "the improper deduction of funds" from indigent inmates' trust accounts. Compl. at 49; see also Slade, 407 F.3d at 253 n.9 (noting that Slade "had the Jail's grievance procedures available to him"). Moreover, the Fourth Circuit has recognized that Virginia law provides adequate remedies for post-deprivation compensation. Wadhams v. Procunier, 772 F.2d 75, 77–78 (4th Cir. 1985); see also Artis v. Mapp, No. 91-6016, 1991 WL 61299, at *1 (4th Cir. Apr. 24, 1991) (concluding that an inmate's complaint of being deprived of property at a local jail should have dismissed as frivolous given the availability of a meaningful post-deprivation remedy under state law).

For these reasons, the court concludes that the complaint fails to state a viable due process claim stemming from the deduction of funds from Moss's inmate trust account.

**B. Claims under State Law**

Because each of the federal claims asserted in the complaint is subject to dismissal for failure to state a claim, the court declines to exercise supplemental jurisdiction over the claim asserted under Virginia Code § 18.2-186.6 and will dismiss that claim without prejudice. See

9

28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

## IV. Conclusion

For the foregoing reasons, the court concludes that Moss's complaint fails to sate a cognizable claim under federal law against any of the named defendants. The federal claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1), and the remaining claim under state law is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Because Moss is entitled to amend his complaint once as a matter of course, the court grants his pending motion to amend and for an extension of time, ECF No. 22, and will permit him to file an amended complaint within 30 days. His pending motion for discovery, ECF No. 21, is denied without prejudice.

An appropriate order will be entered.

Entered: January 13, 2025

Mike Urbanski
Senior U.S.District Judge
2025.01.13 12:48:42 -05'00'

Michael F. Urbanski
Senior United States District Judge